SAMSON, ADM'X, v. SAMSON ET AL.

1. **Estates of Decedents**: TRANSFER OF SECURITIES TO CHILDREN BEFORE DEATH: CONSIDERATION: EVIDENCE: BURDEN OF PROOF: TESTIMONY INCOMPETENT AGAINST ADMINISTRATRIX. The children of the decedent were found, after his death, to have certain notes and mortgages which the widow and administratrix claimed as assets of the estate, but the children claimed that the decedent, before his death, had transferred the securities to them in consideration of an undertaking entered into by each of them to pay to the decedent semi-annually a certain sum during his life. *Held* that the burden of proof was upon the children to establish the making and delivery of the undertakings; and that the children themselves were incompetent to testify, as against the administratrix, to an agreement with the decedent concerning their delivery, and that the husband of one of the children, who was alleged to have joined with his wife in executing one of the undertakings, was also incompetent to testify to such agreement, under § 3639 of the Code.

2. **Gift**: FROM FATHER TO CHILDREN: UNDUE INFLUENCE: EVIDENCE. The evidence in this case considered, (see opinion,) and *held* to establish the fact that the securities in question were given by the decedent to his children a short time prior to his death, and to reveal no fraud or undue influence brought to bear upon the father by the children to induce him to make the gift.

3. **Husband and Wife**: POWER TO DISPOSE OF PERSONAL PROPERTY: DISTRIBUTIVE SHARE OF SURVIVOR. The law places no restriction or limitation on the power of the husband to make such disposition of his personal property during his life-time as he may elect, even though the wife is thereby deprived of the distributive share which otherwise would fall to her upon his death.

4. **Estates of Decedents:** NOTE BELONGING TO ESTATE WRONGFULLY DELIVERED BY CUSTODIAN TO MAKER: WHO LIABLE FOR. If, as claimed, one of the defendants held an unpaid note belonging to the estate of decedent, and he wrongfully delivered it to the maker without payment, then the administratrix should have brought her action against the maker of the note to recover the amount thereof, and judgment therefor against the defendant who so delivered the note was erroneous.

5. **Practice in Supreme Court:** COSTS OF BRINGING UP INCOMPETENT EVIDENCE TAXED TO PARTIES INTRODUCING IT. Although defendants prevail on the appeal of this case, still, as plaintiff was obliged, in presenting her appeal, to bring up a large amount of incompetent testimony which defendants had taken, a proportionate share of the costs is taxed to defendants.

*Appeal from Washington Circuit Court.*

THURSDAY, OCTOBER 22.

PLAINTIFF is the widow of Francis Samson, deceased. She is also administratrix of the estate. The defendants H. F. Samson, L. M. Samson, O. L. Samson and Martha A. Daugherty are the surviving children of Francis Samson. Defendant Wilson Daugherty is the husband of Martha A. Daugherty. Francis Samson died on the twenty-first of April, 1881. A short time before his death defendants received into their possession notes and mortgages of the aggregate value of about $10,000, which had formerly belonged to him, and about the same time he assigned to each of them (except Wilson Daugherty) bank stock of the value of $1,000. Plaintiff brought this action in equity to compel defendants to account for this property, alleging, in one count of her petition, that they obtained possession of it in pursuance of a conspiracy which they had entered into to obtain possession of it during the life-time of their father, and cheat and defraud his estate out of it after his death; and in another count that the property is assets of the estate, and that defendants hold it in trust for the estate. Defendants deny these allegations, and allege that said Francis Samson, on the tenth of February, 1881, gave said property to them, intend-

ing the same as a gift to them; and they allege that at the same time, and as part of the same transaction, they each executed to him an agreement, by which they bound themselves each to pay him semi-annually during his life the sum of $93.50, and that these undertakings constituted a consideration for the transfer of the property to them. They each admit an indebtedness to the estate for a portion of the first semi-annual payments accruing under these contracts, and they brought the amounts into court and tendered them to plaintiff. The circuit court entered judgments against each of the defendants for the amount admitted to be due from him, and, in addition to this, it gave judgment against H. F. Samson for $594.58; that being the amount of a promissory note executed by one E. Q. Elsey to Francis Samson, which he had in his possession and surrendered to the maker, but which was not included in the alleged distribution. Plaintiff and H. F. Samson appeal.

*J. F. Henderson* and *L. C. Blanchard,* for plaintiff.

*H. & W. Scofield,* for defendants.

REED, J.—I. The allegation in the first count of the petition, that the defendants obtained possession of the property in pursuance of a conspiracy which they had entered into to get possession of it during the life-time of Francis Samson, and to cheat and defraud his estate out of it after his death, is not established by the proof. Without setting out the evidence relied upon by plaintiff to establish this allegation, we deem it sufficient to say that in our judgment it fails entirely to prove the charge. Plaintiff contends, however, that upon the admissions contained in the answers she is entitled to recover on the other claim alleged in her petition, viz., that defendants hold the property in trust for the estate, unless they have shown that it was transferred to them by gift. For the purposes of this case it will be conceded that the burden is on the party who claims title to

property under a gift to establish the gift. But, before entering upon the consideration of the question whether the

1. ESTATES of decedents: transfer of securities to children before death: consideration: evidence: burden of proof: testimony incompetent against administratrix.

evidence establishes a valid gift of the property to defendants, it is necessary to consider the claim made by them that their undertaking to make certain semi-annual payments to Francis Samson during his life-time constitutes a consideration for the transfer of the property to them. Their claim is that they each entered into a written agreement to pay him $93.50 semi-annually during his life. It is not doubted that an undertaking of this character would constitute a consideration for the transfer of property. The burden of proof, however, is on defendants to establish the making and delivery of the undertakings. They have introduced in evidence what they claim are the undertakings entered into by them. But we think they have failed to show by any competent evidence that the undertakings were ever delivered to Francis Samson. · It is shown that after his death each undertaking was in the hands of the party who executed it. Defendant's claim, however, that, when the instruments were executed, by agreement between them and Francis Samson they were deposited with L. M. Samson, one of the defendants, and that after the death of the father, as they were not deemed to be assets of the estate, they were surrendered to the obligors. But no evidence of this agreement to deposit the instruments with L. M. Samson, or of their delivery to Francis Samson, has been offered, except the testimony of the defendants themselves, and, under the provisions of Code, § 3639, they are not permitted to testify to the transaction. It was a personal transaction between them and him, and they are clearly not competent witnesses to it. And in this connection we deem it proper to say that in our opinion the testimony of each of the defendants with reference to the transaction in which it is claimed the property was delivered to them should be excluded. It is not claimed by counsel that any of the defendants, except Wilson Daugh-

Samson, Adm'x, v. Samson et al.

erty, is competent to testify to the transaction. It is insisted, however, that, as the alleged gift was to his wife, and not to him, he is a competent witness to it. It is shown by his testimony that he was present during the greater part of the transaction, and that, at his wife's request, he joined with her in the undertaking to make the semi-annual payments to her father. By that act, we think, he became a party to the transaction in such sense as that the statute precludes him from testifying with reference to it. If the transfer of the property is to be upheld, then, it must be sustained on the theory that it was made as a gift to the defendants, for the evidence fails to show that it was supported by any substantial consideration.

II. We will inquire, then, whether the allegation that it was intended as a gift to the defendants is established. As 2. GIFT: from stated above, in determining this question, the father to children: evidence to establish. testimony of the defendants cannot be considered. It is shown by competent evidence that for some time prior to the ninth of February, 1881, the notes and mortgages in question had been in the possession of H. F. Samson. He resided in Louisa county, while his father lived in Washington. The notes and mortgages were against parties living in Louisa county, and they had been left with H. F. Samson for collection. On the ninth of February the deceased went to the house of his son, (H. F.,) and at his request the papers were delivered to him. On the next day, or the day following, defendant H. F. Samson, in the presence of his father, wrote the following words on the back of each of the notes, "payable to bearer," and the father signed his name under them, stating at the time that certain of the notes were to go to his son L. M. Samson, and certain others to Mrs. Daugherty, etc. The facts with reference to the delivery of the notes by H. F. to his father, and the subsequent indorsement of them by the father, and his declaration with reference to them, are proven by the testimony of the wife of H. F. Samson. She was present at the transactions,

but was not a party to them. They may, therefore, be proven by her testimony. *Johnson v. Johnson*, 52 Iowa, 586. On the eleventh of February, deceased went to a national bank in which he was a stockholder, and on the books of the corporation made an assignment of $1,000 of stock to each of his children, and on the same day returned to his home in Washington. Soon after this defendants had the notes and mortgages in their possession, and proceeded to make collections of the amounts due upon them, at the time asserting that they were the owners of them. Deceased knew of these facts, and made no denial of their right to them, and in conversation with third parties he stated that he had distributed a portion of his property among his children. We are well satisfied by the evidence that the property was voluntarily given by the deceased to defendants. No other reasonable conclusion can be reached from the facts proven.

III. Plaintiff contends, however, that, if the transaction was a gift, it is presumptively fraudulent, and that she will THE SAME: be entitled to recover unless defendants have undue influence. shown that it was the free, unbiased act of the deceased. The rule that a gift obtained by a person standing in a confidential or fiduciary relation to the donor is *prima facie* void is well settled, and it has often been applied to transactions between parent and child. There was nothing, however, in the relations which are shown to have existed between the parties to the transaction in question which leads us to suspect that the deceased acted under the influence of his children in making the gift. There was no relation of special confidence between the parties, nor did any of them stand in a fiduciary relation to him. It is true that H. F. Samson had acted as his agent in making collections, and that he held the notes and mortgages in question in his possession for a time; but he had no other authority with reference to the matter except to receive the moneys paid and transmit them to his father. He had no general authority to

transact business for his father, but, as the parties indebted on the notes lived much nearer to him than to his father, the arrangement by which they were left with him for collection was a mere matter of convenience. None of the defendants lived with their father at the time of the transaction, and at that time he was in possession of all his mental faculties, and was quite active, physically, for a man of his age, (being sixty-nine years old,) and was in good health. He was not only fully able to attend to his affairs, but was in the habit constantly of giving attention to them, and he was a man of intelligence and character. The rule contended for is applied in every case when the relations of the parties, or the condition of the donor, were such that an undue influence may have been exercised by the other party over him. But nothing of the kind appears in this case. The transaction appears to have been the not unusual one of a father during his lifetime distributing a portion of his property among his children, and there was nothing in the circumstances of the transaction which brings it within the reason of the rule. But if we were to concede that the burden of proving its validity was on the defendants, we would be compelled to find, under the evidence, that the gift was the free and voluntary act of the donor, and that the transaction was not tainted by any actual fraud.

IV. It is finally contended that said gift is void as against public policy. By the transaction the deceased was divested

**3. HUSBAND and wife: power to dispose of personal property: distributive share of survivor.** of much the greater part of his estate; and the argument of counsel is that, as the husband cannot by will divest his widow of the distributive share which the law gives her in his estate, he should not be permitted to accomplish that result by distributing it during his life-time to his heirs. The ready answer to this claim is that it is in the personal property of which the husband dies seized that the law gives the widow a distributive share. Code, § 2436. But during his life-time she has no inchoate right in such property, and he

Samson, Adm'x, v. Samson et al.

may make such disposition of it during his life-time as he sees fit. If he sells it, or makes any other disposition of it by which he is divested of the ownership, the wife has no claim upon it after his death. The law has placed no restriction or limitation on the power of the husband to make such disposition of his personal property during his life-time as he may elect.

V.    As to the appeal of H. F. Samson. The circuit court rendered judgment against him for the amount of a promissory note given by one E. G. Elsey to Francis Samson. This note was not included in the gift, and defendant had it in possession at the time of his father's death, and afterwards surrendered it to the maker. Defendant's claim is that this note was given to him by his father some years before his death, as a contribution by him to the expense of the education of defendant's son. But on the request of his father, made before his death, he surrendered it to the maker, who had for years been his father's pastor, and for whom he desired to make some provision out of his estate.

*4. ESTATES of decedents: note belonging to estate wrongfully delivered by custodian to maker: who liable for.*

Plaintiff contends that the gift of this note to defendant is not proven by competent evidence. We find it unnecessary to determine whether this is so or not; for, if it be conceded that the note was assets of the estate, she is not entitled to recover the amount of the debt from defendant. If it belonged to the estate, and he had no authority to surrender it to the maker, the debt evidenced by it was not satisfied by the surrender, but the administratrix has the same right to proceed against the maker for the collection of the debt as though the note was in her possession.

As plaintiff, in prosecuting her appeal, was required to bring up a large amount of incompetent testimony, which defendants had taken, one-fourth of the cost of the abstract will be taxed to them.

*5. PRACTICE in supreme court: costs of bringing up incompetent evidence taxed to parties introducing it.*

On plaintiff's appeal the judgment is affirmed. Reversed on defendant H. F. Samson's appeal.