## MARTIN et al. v. BRUNER et al.

No. 6924—Opinion Filed June 12, 1917.

(166 Pac. 397.)

(Syllabus by the Court.)

**1. Appeal and Error—Equity Cases—Review—Reversal—Judgment.**

In all cases cognizable only in a court of chancery, this court on appeal has the power to consider the whole record, to weigh the evidence, and, when the judgment of the trial court is clearly against the weight of the evidence, render or cause to be rendered such judgment as the trial court should have rendered.

**2. Appeal and Error—Cancellation of Instruments—Fraud—Evidence — Restoration of Purchase Price—Reversal.**

In a suit against M. and F. for the rescission and cancellation of a contract of sale for 160 acres of land and two warranty deeds, with covenants against incumbrances, for 80 acres each, made, executed, and delivered by plaintiff to defendants pursuant thereto, on the ground of fraud in their procurement, and also against H. to set aside, but not for fraud in its procurement, a prior executory contract of sale for the west 80 acres of the land, evidence examined, and held insufficient to preponderate against the contract and deeds assailed in the hands of M. and F. and repel all opposing presumptions in favor of their validity, and hence

the court erred in setting the same aside. Held, further, that plaintiff is not entitled to relief on account of her failure to return or offer to return that part of the purchase money paid her by M. and F. at the time of the execution of the instruments assailed. Held, further, that as the trial court adjudged and decreed H. to be the owner of the 80 acres covered by his contract, subject only to the payment and release of certain mortgages on 120 acres including his 80 acres of the land, and the same is not complained of, and M. and F. offer to pay plaintiff the balance of the purchase money due her on the east 80 when said mortgages are discharged by H., the cause is reversed as to M. and F., not for a new trial, but with directions to vacate the judgment canceling their contract and deed to the east 80 acres in controversy, and requiring said money to be paid into court to be turned over to plaintiff upon the discharge of said mortgages by H.

Error from District Court, Okmulgee County; Wade S. Stanfield, Judge.

Suit by Creacy Bruner against Leslie Martin, J. G. Fretwell, and John H. Hoard. Judgment for plaintiff and for defendant Hoard, and defendants Martin and Fretwell bring error. Reversed, with directions.

Cochran & Ellison, for plaintiffs in error.

Herbert E. Smith, for defendant in error Bruner.

Wallace & Stephens, for defendant in error Hoard.

TURNER, J. On June 11, 1913, defendant in error Creacy Bruner, a Creek freedman, in the district court of Okmulgee county, sued Leslie Martin and J. G. Fretwell, plaintiffs in error, for the rescission and cancellation, on the ground of fraud in their procurement, of a certain contract of sale and two certain warranty deeds executed by her pursuant thereto, affecting the title to her allotment of 160 acres of land in what was the Creek Nation. In the same action she joined John H. Hoard as a party defendant, and sought also to clear her title of a certain prior executory contract of sale entered into between herself and Hoard for a portion of said land, but not upon the ground of fraud in its procurement.

After answers filed by Martin and Fretwell, in effect, a general denial, and by Hoard, offering to perform his contract and thereby become entitled to a delivery of a deed in escrow conveying to him a part of the land, there was judgment against plaintiff and in favor of Hoard, decreeing him to be the owner of 80 acres of the land conveyed by his contract, "subject only to the payment and release of the mortgages" covenanted by him to be paid pursuant to his tender, and in favor of plaintiff and against

Martin and Fretwell, canceling their contract and deeds and clearing her title as to them; and Martin and Fretwell bring the case here. They assign for error that the judgment is contrary to the evidence. This sends us to a consideration of the whole record for the purpose of weighing the evidence, and if the judgment is clearly against the weight of the evidence, we will not only reverse it, but will render or cause to be rendered such judgment as the trial court should have rendered. Schock v. Fish, 45 Okla. 12, 144 Pac. 584.

The evidence discloses that plaintiff's allotment consisted of 160 acres lying in a square and divided by a section line running north and south. The west 80 and the north half of the east 80 were her surplus, and in 1905 were incumbered by a mortgage of $1,000. Realizing she would be unable to pay the same when due, she and Hoard entered into the following contract:

"This agreement made this 14th day of October, 1907, by which Creacy Bruner agrees to sell to John H. Hoard and John H. Hoard agrees to buy the east half of the southeast quarter section ten, township eleven north, range thirteen east, for a total sum of twelve hundred dollars, to be paid in the following manner: Two hundred dollars cash in hand, the receipt of which is hereby acknowledged; one thousand dollars with interest at eight per cent. to be used in releasing one certain trust deed for one thousand dollars, with eight per cent. interest on same, given by M. F. Dunleavy to Pierson and Taft on the east half of the southeast quarter of section ten, and the northwest quarter of the southwest quarter of section eleven, township eleven north, range thirteen east, due September 1, 1911; said Creacy Bruner is to deposit in escrow with the Citizens' Bank of Henryetta, I. T., a warranty deed to John H. Hoard for the E. ½ of the S. E. ¼ of sec. 10, twp. 11, range 13, to be delivered to him on presentation of above trust deed fully paid and released. However, should said John H. Hoard fail to pay interest on said loan when same is due, or fail to pay principal when same is due, said Creacy Bruner, on presenting evidence of this fact to said bank, can withdraw said deed and have this contract annulled by filing affidavit to this effect with the recorder of deeds.

her
"Creacy X Bruner.
mark
"John H. Hoard.

"Witness: E. E. Schock.

"Witness W. R. Wilson.

"Acknowledged, subscribed, and sworn to before me the undersigned, a notary public in and for the western district, Indian Territory, this 14th day of Oct., 1907.

"Witness by hand and official seal on the date above mentioned.

"[Seal]     E. E. Schock, Notary Public."

"Filed for record on the 4th day of April, 1910, at 3 o'clock and 20 minutes p. m. and recorded in Book M.47, at page 168, of the land records of Okmulgee county, Oklahoma."

After which and pursuant thereto, she put Hoard in possession and the deed in escrow. After taking possession, Hoard erected upon the land some $1,800 worth of improvements and cultivated the same and occupied it as his home. Creacy occupied the east 80 as her home, and both continued so to do until the mortgage fell due. At that time Hoard, being unable to pay, sought to have it renewed so as to cover his 80 acres only; but, failing in that induced Creacy and her husband to join with him in two mortgages, one for $1,000 and the other for $250, both due in 1921, and both covering the same land as the first mortgage; that is, her surplus allotment of 120 acres. When this was done, the first mortgage was extinguished, leaving instead an indebtedness of $1,250 to be paid by Hoard before becoming entitled to a delivery of his deed in escrow. Thus matters stood when Martin and Fretwell, who were in business in Henryetta, hearing through Knowles, the son-in-law of Creacy, that the land was for sale, took a "pencil search" of the title showing not only these, but perhaps other incumbrances, and went out to see Creacy at her home to buy the whole 160 acres. This they did on September 15, 1912, where, in the presence of Knowles, a son and daughter of Creacy, and Creacy and her husband, they soon reached an agreement. Returning home, Martin and Fretwell reduced it to writing and returned next morning, where all were again present but Knowles, whom Creacy sent for. Arriving, not only he, but Martin and the son, read aloud the agreement to Creacy in the presence of all the others and explained it to her, whereupon all parties in interest executed the same. It reads:

"This contract and agreement made and entered into on this the 16th day of September, A. D. 1912, by and between Creacy Bruner and Jesse Bruner, husband and wife, each for his or her self and each for each other, of Hoardsville postoffice, in Okmulgee county, Oklahoma, parties of the first part, and Leslie Martin and J. G. Fretwell, of Henryetta, Oklahoma, parties of the second part, witnesseth: That the said parties of the first part have this day made and executed warranty deed covering the following described land in Okmulgee county, state of Oklahoma: E. ½ of S. E. ¼ of section ten (10), and W. ½ of S. W. ¼ of section eleven (11) of

township eleven (11) north, range thirteen (13) east, containing 160 acres more or less.

"The above grantors hereby agree to and with the parties of the second part that they, the said parties of the first part, have this day bargained, sold and conveyed to said parties of the second part the above-described land, under the following terms and conditions: That said parties this day paid unto said first parties the sum of $100, and agree to pay said first parties the remainder of said consideration, less the incumbrances that first parties will be compelled to pay on said land out of the full consideration of eighteen hundred ($1,800) dollars:

"Now, therefore, for and in consideration of the sum of one hundred ($100) dollars, and other good and valuable considerations, the receipt of which is hereby acknowledged, and conditions, obligations and provisions of this contract to be observed and performed by the said parties of the second part.

"In witness whereof the parties have hereunto set their hands and seals this 16th day of September, 1912.

her<br>
"Creacy  X  Bruner.<br>
mark

his<br>
"Jesse  X  Bruner.<br>
mark

"Witnessed by James O. Hamilton.

"The names of Creacy Bruner and Jesse Bruner written by me in their presence and at their request.      James O. Hamilton."

She says that she was induced to sign it because Martin and Fretwell told her that Hoard had sold his 80 and hers, including her homestead, and had left the place; also that they told her that the mortgages were being foreclosed, and that the land would be sold and she would get nothing, unless she sold to them; and that the mortgage covered her entire allotment, which was not true. This not only they, but Hamilton and Knowles, deny and the same is not borne out by any other witness; and, as not only they were present at all times during the negotiations, but there were also present her son and his wife, and perhaps a daughter, we are inclined to discredit her statement in view of the entire testimony. It is clear, however, that she wanted to sell and did sell, as stated, and then and there made, executed, and delivered to them two warranty deeds, each containing covenants against incumbrances, each for 80 acres of her allotment, and received the $100 recited in the contract; also, from time to time thereafter, $56.43 as a part of the purchase money.

After the contract and deeds were executed and delivered, Martin and Fretwell secured a copy of Creacy's contract with Hoard and prepared for her signature and she signed the following:

"Affidavit.

"State of Oklahoma, County of Okmulgee—ss. Creacy Bruner, of Hoardsville P. O., Okmulgee county, state of Oklahoma, after being first duly sworn upon her oath deposes and says that her name is Creacy Bruner; that she is about sixty-five years of age; that she was allotted the E. ½ of S. E. ¼ of section ten (10); and the W. ½ of S. W. ¼ of section eleven (11), township eleven (11) north, range thirteen (13) east in the Creek Nation, now in the county of Okmulgee and state of Oklahoma.

"The said Creacy Bruner states upon her oath that on October 14, 1907, that she entered into a contract with one John H. Hoard, in which the said John H. Hoard agreed to pay the interest and principal of one thousand dollars on a certain mortgage given by M. F. Dunleavy to Pierson and Taft covering the east half of the southeast quarter of section ten (10) and the northwest quarter of the southwest quarter of section eleven (11) in township eleven (11) north, range thirteen (13) east, together with all the interest on the same at the rate of eight per cent. per annum; that it was agreed in said contract that said mortgage and interest was to be fully paid and released so as not to leave any mortgage on said above-described land, the same to be paid on or before September 1, A. D. 1911; that the said Creacy Bruner further states upon her oath that the said amount of one thousand dollars has never been paid or satisfied, and that the said John H. Hoard failed to have said mortgage for one thousand dollars fully paid up and satisfied, and that he has failed and refused and neglected to fully pay off and satisfy said mortgage loan for one thousand dollars, and thereby has forfeited all his right under the contract given by her for the sale of the E. ½ of the S. E. ¼ of section ten (10), township eleven north, range thirteen (13) east, and that all rights under the same are now null and void and of no effect whatever. I, the said Creacy Bruner, hereby and by these presents declare the contract and all contents and effect therein set forth which was made by me with John H. Hoard on the 14th day of October, A. D. 1907, to be absolutely null and void, and declare the said contract annulled in accordance with said contract; that the above is true and correct so help me God.

her<br>
"Creacy  X  Bruner.<br>
mark

"The name of Creacy Bruner written by me at her request.      James O. Hamilton.

"Witnessed by Hattie Knowles.

"Subscribed and sworn to before me this 16th day of September, 1912.

"[Seal]        James O. Hamilton,
"Notary Public.

"My commission expires January 29, 1916.

"Filed for record on the 26th day of October, 1912."

After which, finding Hoard still in possession of the 80 acres under said contract, they brought suit to dispossess him; whereupon Creacy, being informed, she says by Hoard, that he had not sold or attempted to sell any of the land, and by a "Henryetta Judge" that he could not sell her homestead, she, without tendering back the purchase money thus received, brought this suit for rescission and cancellation, as stated. Her specific allegations of fraud upon which issue was joined are:

"That heretofore, and a day or two prior to the 16th day of September, 1912, the exact day being unknown to the plaintiff, while plaintiff believed that said mortgage indebtedness had been paid as aforesaid, and that said John H. Hoard had kept and performed said contract, the defendants Leslie Martin and J. G. Fretwell called at the home of the plaintiff several miles east of Henryetta, and there informed plaintiff and her said husband, Jesse Bruner, that the said John H. Hoard had not paid off and discharged said mortgage indebtedness, but that there was a good and valid mortgage signed by her, her husband and said John H. Hoard in favor of the said Harry Lee Taft covering the surplus and homestead lands of the plaintiff, and that said mortgage was being foreclosed and that plaintiff's said land would be sold and she would lose the same, but that if the plaintiff would give them a deed to said land, they would have the land and pay plaintiff the value thereof, and make the said John H. Hoard pay for the use and rents of said land as to the E. ½ of the S. E. ¼, sec. 10 aforesaid, which offer plaintiff took under consideration, and said Martin and Fretwell returned home, and again, and on the 16th day of September, 1912, returned to the home of the plaintiff, with a notary public, with deed and contract partly written, and on said day the said defendants Martin and Fretwell again represented to the plaintiff and her said husband that said John H. Hoard had given a mortgage upon all of plaintiff's land, including the homestead, and that unless she did as they offered, she would lose all of her land, and claimed to have an abstract showing such mortgage, and that it was being foreclosed, which plaintiff believed, being unable to read or write, wholly uneducated, unlettered, and having no knowledge of business affairs, and much less legal papers or their effect, and ignorant of the condition of such matter or the motive of said Martin and Fretwell, and under such belief and reliance upon the truthfulness of such statements of said Martin and Fretwell, which representations caused her not to make further search or inquiry, this plaintiff agreed to sell to said Martin and Fretwell her said homestead and surplus allotments, and said Martin and Fretwell agreed to buy the same, and to pay her on said date the sum of $100 cash, and $1,700 as soon as he had clear d the title of said land from said mortgage upon the same, which they would

do at their own charge and expense, and that they would give plaintiff a contract to that effect; that believing such statements of said defendants Martin and Fretwell, the plaintiff signed by mark, together with her husband, a deed in favor of said Martin and Fretwell to said land, and she was given $100, and a contract was delivered to her, which she was unable to read, a copy of which is attached hereto, marked as Exhibit C and made a part hereof. * * * Plaintiff further says that instead of said contract stipulating that the balance of $1,700 would be paid her as aforesaid, the same does not so state the true and real agreement, but provides that the said Martin and Fretwell will deduct whatever sums or sum she would have to pay in order to pay off the mortgage incumbrance covering said land, which condition, plaintiff alleges, was never made known to her, and was never agreed to by her, and she has only just become informed thereof, together with the facts hereinafter alleged, and hence this suit. Plaintiff further alleges that said statements and representations of the defendants Leslie Martin and J. G. Fretwell, that plaintiff's homestead allotment was included in said mortgages for $1,000 and $250 aforesaid, were incorrect and untrue, and she alleges that the same were made to her by said Martin and Fretwell for the purpose of tricking and deceiving her into making said contract and deed or deeds on her part, and that the further representations that said mortgage or mortgages were being foreclosed and that she would lose her land unless she made such contract and deed or deeds were likewise untrue, and were made for the purpose of deceiving this plaintiff to the personal gain and benefit of said Martin and Fretwell, and which in fact and truth did deceive the plaintiff and was partly the cause for the signing of said contract and deed or deeds, as she would not have otherwise done; that plaintiff has just learned that said homestead allotment was not included in said mortgage of August 31, 1910, neither was the same being foreclosed, but that it runs until January 1, 1921, and hence her delay in bringing this suit."

While the legal sufficiency of these allegations to set aside the contract and deeds in the hands of Martin and Fretwell for fraud is not challenged, they were, it seems, insufficient for that purpose, and of course, if established, would have no probative force. We say they were insufficient for the reason that Creacy was chargeable with knowledge of what land her mortgages covered, and whether or not the same were being foreclosed, and hence she cannot be heard to say that she was deceived by relying on statements made her which she, in legal contemplation, was presumed to know to be false. Not only this, but assuming her allegata to be sufficient, reviewing the whole record, the evidence fails to preponderate against the deeds assailed and repel all opposing pre-

sumptions in their favor. This the evidence must do before a court of equity is justified in setting the deeds aside. In Moore v. Adams, 26 Okla. 48, 108 Pac. 392, we said:

"In cases where fraud is alleged in the procuring of the execution of written instruments or deeds, the proof must sustain the allegations by a preponderance of the evidence so great as to overcome all opposing evidence and repel the opposing presumptions. (a) It should be of such weight and exigency as to satisfactorily establish the wrongful conduct charged; honesty and fair dealing as a rule being presumed."

And in United States v. Maxwell Land Grant Co., 121 U. S. 325, 7 Sup. Ct. 1015, 30 L. Ed. 949, the court said:

"We take the general doctrine to be that, when in a court of equity it is proposed to set aside, to annul, or to correct a written instrument for fraud or mistake in the execution of the instrument itself, the testimony on which this is done must be clear, unequivocal, and convincing, and that it cannot be done upon a bare preponderance of evidence which leaves the issue in doubt."

See, also, Adams et al. v. Porter et al., 58 Okla. 225, 158 Pac. 899.

We say this for the reason that little that is intelligible can be gathered from her testimony, and nothing to establish the charge of fraud in the procurement of the deeds can be gathered from the testimony of her own witnesses. And the evidence fails to preponderate to that extent to establish the fact that she did not know what the contract contained, and that she was misled to believe it provided that Martin and Fretwell were to pay her the balance of $1,700, without deductions for incumbrances. This for the reason the evidence discloses that not only did the notary, Hamilton, read over and explain to her the contract before she signed it, but that her son-in-law, Knowles, did the same thing, and that all present discussed and fully understood the transaction before the execution of the instruments in question. But, aside from this, she was not entitled to a rescission and cancellation thereof for the reason that she has failed to tender back, in her pleadings or otherwise, or offer to restore to these defendants the $100 paid her at the time of the execution of the contract, or the $56.43 subsequently received pursuant thereto. Clark v. O'Toole, 20 Okla. 319, 94 Pac. 547; Stevens v. Elliott et al., 30 Okla. 41, 118 Pac. 407. That she received this $100 as a part of the purchase money at the time of the execution of the contract appears upon the face thereof, and also by the testimony of every witness other than herself. Concerning which she first denied that she had sold her land to Martin and Fretwell at all, but later

stated that she had. She further stated she did not know why the $100 was paid her, but thought it was a loan for the purpose of paying her taxes and would have to be repaid. In response to a question from the court, she stated that the money was paid to her to bury her boy Bennie, who, she said, had died that day. But when it appeared that Bennie was present at the execution and delivery of the contract and deeds assailed and signed the same as a witness, she admitted he did not die for at least two weeks after the sale.

But the quality of justice here administered to "Aunt Creacy" shall not be strained. It appearing that the trial court, pursuant to his offer, decreed Hoard to be the owner of the west 80 covered by his contract "subject only to the payment and release of the mortgages" on the 120 acres, aggregating $1,250, which, when paid, would entitle him to a delivery of the deed in escrow conveying the same to him; and that this part of the judgment is uncomplained of; and it further appearing that Hoard has complied therewith and by said payment and release is entitled to receive said deed to the west 80 acres and that defendants Martin and Fretwell are only complaining of that part of the judgment canceling their contract and deed to the east 80, and are offering to turn over to Creacy the remainder of the purchase money due on that 80, to wit, $747.57, with 6 per cent. interest from June 11, 1913, should the cause, so far as that 80 is concerned, be reversed as to them, and such appears to be agreeable to Creacy—let the cause be reversed as to them, not for a new trial, but with directions to require defendants to pay said money into court, and, when done, to vacate that part of the judgment clearing the title and canceling the deed to the east 80 acres of the land in controversy; and, when done, to pay said money over to Creacy when Hoard shall have secured the release of record of the mortgages aforesaid.

Let the costs be equally divided between plaintiff and defendants Martin and Fretwell. It is so ordered.

All the Justices concur.