## SHARPE et al. v. WRIGHT.

No. 10827—Opinion Filed Sept. 26, 1922.

Rehearing Denied Dec. 19, 1922.

(Syllabus.)

1. **Homestead — Preparations and Intent to Occupy — Sufficiency.**

The homestead character may be impressed upon premises, without actual occupancy, provided the claimant has a fixed intention to make a home thereon, and such intention is evidenced by overt acts of preparation of such premises for a home, but the actual occupancy of said premises, or an attempt in good faith to occupy the same must follow the overt acts of preparation without unreasonable delay.

2. **Frauds, Statute of — Parol Evidence to Explain Deeds — Estoppel of Grantee to Urge Alteraton.**

Where the grantee in a deed voluntarily and without misapprehension, fraud, or mistake alters such deed by erasing his name and inserting the name of another as grantee, with the intention of vesting the title in such other, nether he, nor any person claiming by title subsequently derived from him, is to be permitted to show by parol evidence that such deed is other than that which it shows on its face to be.

3. **Banks and Banking — Misapplication of Funds by Cashier to Private Business — Rights of Bank in Profits as Trust Fund.**

Where S., a director and cashier of a bank, formed a partnership with P., and such partnership engaged in the business of buying and selling horses, and S. loaned P. various sums of the bank's money, and also loaned other parties funds of the bank with which to purchase horses from such partnership, and where the profits of such partnership were divided between S. and P., held, that S. was not entitled to retain said profits for himself, but they belonged to the bank, and he was bound to surrender the same to the bank.

4. **Deeds — Validity — Unauthorized Execution of Deed by Bank Cashier to Himself.**

Where W., president of a bank, signed and acknowledged a blank deed, and left it in the files of the bank, and S., the cashier of said bank, abstracted said deed from the files of the bank, filled in all the blanks so as to convey the property to himself, wrote the name of the bank over the signature of the president, affixed the corporate seal of the bank and attested the same as secretary, all of which was done without the knowledge or consent of the president or board of directors of the bank, and no consideration was paid, held, that such deed is void.

5. **Appeal and Error — Discretion of Court —Cross-Examination of Witnesses.**

The latitude allowed on cross-examination of a witness is largely within the discretion of the trial court, and, unless such discretion has been abused to the manifest injury of the complaining party, the case will not be reversed for alleged error in permitting improper cross-examination.

Error from District Court, McCurtain County; C. E. Dudley, Judge.

Action by James A. Sharpe and B. L. Sharpe against F. H. Wright to quiet title. Judgment for defendant, and plaintiffs bring error. Affirmed.

I. C. Sprague, for plaintiffs in error.

John C. Head, for defendant in error.

NICHOLSON, J. This is a suit to quiet title to certain real estate situate in Idabel, McCurtain county, brought by James A. Sharpe and B. L. Sharpe against F. H. Wright. Since the appeal was lodged in this court F. H. Wright died, and the cause has been revived in the name of Ray Wright, executrix and legatee of F. H. Wright, deceased.

It appears that F. H. Wright was president and James A. Sharpe was cashier of the Idabel State Bank. Wright resided at El Reno; Sharpe resided at Idabel, and was in charge of the bank. Sharpe and one Claude Parham entered into a partnership and engaged in the business of buying and selling horses. Sharpe, as cashier of the bank, loaned Parham various sums of the bank's money during the existence of such partnership, and also loaned funds of the bank to various parties with which to purchase horses from the firm of Parham and Sharpe; the profits derived from the sale of horses being divided equally between Claude Parham and James A. Sharpe. Sharpe deposited his share of the profits in an account in said bank known as "J. A. Sharpe, Special." Sharpe purchased the property in controversy from one A. J. Ethredge for the sum of $850, and the property was conveyed to Sharpe by deed dated July 24, 1912. At about this time the account designated "J. A. Sharpe, Special," was charged with two checks, one for $500

and the other for $350. Sharpe testified that he paid Ethredge in two payments. The deed was not recorded promptly, but was held by Sharpe. Thereafter it was by Wright discovered that Sharpe had been loaning money to various parties with which to purchase horses from Parham and Sharpe, and that some of the notes taken were of little or no value. Wright complained of Sharpe's action in this regard, whereupon on December 17, 1912, Sharpe wired Wright to come to Idabel at once, and bring a man to take charge of the bank; that he would find a letter in the safe. In this letter from Sharpe to Wright, Sharpe stated that he inclosed therewith the unrecorded deed to the property, and had changed the name of the grantee therein from himself to Wright so that Wright might use the property to cover the losses occasioned by bad loans made by Sharpe. The deed was inclosed as stated, and shows that Sharpe's name had been erased and Wright's inserted. At this time Sharpe and his wife had never occupied the premises. Sharpe left Idabel, but later returned and resumed his duties in the bank. Thereafter F. H. Wright and wife conveyed said property to the Idabel State Bank. After Sharpe returned to Idabel, the premises were rented to him by the bank, and he and his wife took possession thereof and paid rent therefor for some time.

In September, 1914, F. H. Wright, as president, signed and acknowledged a blank deed and left it in the bank and afterwards Sharpe, without the knowledge or consent of Wright, filled out the deed by inserting the name of the bank as grantor and his own name as grantee, and by writing the name of the bank over the signature of Wright as president, affixed the corporate seal of the bank, attested the same as secretary, had the acknowledgment changed from an individual to a corporate form and filed the same for record. On February 8, 1915, Sharpe and wife conveyed said property to one J. F. Kirby, and on said day, Kirby and wife reconveyed the property to B. L. Sharpe, the wife of James A. Sharpe; these conveyances being without consideration. Afterwards, the Idabel State Bank conveyed the property to F. H. Wright for a consideration actually paid of $964.12, which amount was approximately the amount of the losses sustained by the bank because of bad loans made by Sharpe to purchase horses of Parham and Sharpe.

Sharpe testified that F. H. Wright paid the bank the aforesaid sum at the time the property was conveyed to Sharpe by the bank, but does not explain why Wright was paying for property for him. The trial court found against the plaintiffs and entered judgment in favor of F. H. Wright, quieting the title to said property in him, in accordance with the prayer of his answer and cross-petition, and it is this action of the trial court of which plaintiffs in error complain.

The trial court held that the plaintiffs were estopped to assert any change made by them in the deed from Ethredge, and that the funds which were used to purchase the property from Ethredge were funds belonging to the Idabel State Bank, and were procured from said bank by James A. Sharpe while he was cashier thereof, said funds being obtained by loaning money of said bank to persons to purchase chattels in which Sharpe held an interest, and that he was entitled to no profits from the investment of trust funds. The plaintiffs insist that they were not estopped to assert the alteration of the deed from Ethredge to Sharpe, for the reason that the property was acquired as a homestead, and that it could only be alienated by both the husband and wife joining in the conveyance thereof.

The property was purchased by Sharpe in July, 1912; the change of the name of the grantee in the Ethredge deed was made in December, 1912. The Sharpes did not occupy the property at that time, and, in fact, never went into possession thereof as the owners, but did, in February or March, 1913, move into the property as tenants of the bank; they never claimed to be the owners of the property until after Sharpe filled out the blank deed executed by Wright and placed the same of record.

While the homestead character may be impressed upon premises without actual occupancy, if the claimant has a fixed intention to make a home thereon and evidences such intention by overt acts of preparing the same for a home, yet the actual occupancy of the land or an attempt in good faith to occupy the same must follow the overt acts of preparation without unreasonable delay. Davis v. First State Bank of Idabel, 65 Okla. 211, 166 Pac. 92; Harris v. Cherokee State Bank, 82 Okla. 151, 198 Pac. 878. The plaintiffs not having occupied the property prior to the change in the deed, and making no claim of ownership until after September 9, 1914, cannot now be heard to say that the property was their homestead in December, 1912, when Sharpe attempted to convey the property to Wright by inserting Wright's name as grantee in the Ethredge deed. The homestead character, if it could exist at all under the facts, had not attached at that time

The plaintiffs in error, to make out their case, were required to prove title in themselves. They pleaded a deed from Ethredge to Sharpe, but when they offered the deed in evidence, the name of Wright appeared as the grantee therein. The plaintiffs then offered evidence to show that the deed had been by James A. Sharpe altered by erasing his name and inserting the name of F. H. Wright as grantee. This alteration was made by Sharpe voluntarily and without fraud, misapprehension, or mistake. It has been repeatedly held that when the grantee has voluntarily and without any misapprehension, fraud, or mistake destroyed or consented to the destruction of the deed with a view of reinvesting the title in the grantor, he is not permitted to show the contents of the deed so destroyed by parol evidence. Farrar v. Farrar (N. H.) 17 Am. Dec. 410; Mussey v. Holt (N. H.) 55 Am. Dec. 234; Speer v. Speer (Ind.) 62 Am. Dec. 418; Parker v. Kane, 4 Wis. 1, 65 Am. Dec. 283; Howard v. Huffman (Tenn.) 75 Am. Dec. 783.

While Sharpe did not alter or destroy the deed with the intention of reconveying the title in Ethredge, he did alter it with the intention of vesting the title in Wright for the bank. Both he and his wife recognized the bank as the owner of the property and occupied the same as its tenants, and they will not be permitted to establish by parol evidence that the deed is other than that which it shows on its face to be.

The trial court found that the property was purchased with funds belonging to the bank, which funds were procured from the bank by James A. Sharpe as cashier thereof, loaning the funds of the bank to persons to purchase property in which he, Sharpe, was interested. This finding is supported by the evidence. Sharpe testified that, during the time he and Parham were in business together, he, as cashier, loaned the bank's money to Parham; that he loaned various parties money with which to purchase horses from Parham and Sharpe, and he admitted that he received half of the profits derived from such business.

By section 270, Rev. Laws 1910, it is made unlawful for any active managing officer of any bank organized or existing under the laws of this state to borrow, directly or indirectly, money from the bank with which he is connected, and makes such officer guilty of larceny of the amount borrowed. Clearly, Sharpe borrowed money indirectly from the bank of which he was the managing officer and also a director. He made certain profits from the horse business fin-

anced with the funds of the bank, and upon well-settled principles governing courts of equity he will not be permitted to retain those profits for himself; they belong to the bank. Farmers & Merchants Bank v. Downey, 53 Cal. 466, 31 Am. Rep. 62. These profits, which belonged to the bank, had been invested in the property in controversy, and in order that the bank might obtain such profits and for the purpose of making good the loss occasioned by his misapplication of the funds of the bank, Sharpe attempted to vest the legal title to said property in Wright for the benefit of the bank in the manner hereinbefore indicated. Having heretofore determined that the plaintiffs are estopped to question the validity of the deed offered in evidence by them, which shows a conveyance of the legal title from Ethredge to Wright, it becomes unnecessary to determine the equitable rights of the bank in the property.

The court found that Wright signed the blank deed and left it in the bank; that Sharpe abstracted this deed from the files of the bank, filled in all blanks so as to convey the property to himself, wrote the words "Idabel State Bank" over the signature "F. H. Wright, Pres.," and filed the same for record; that he paid no consideration whatever therefor, and that said blanks were filled in without the knowledge or consent of Wright, or the board of directors of the bank. This finding is fully supported by the evidence. This deed was void, and the deeds from James A. Sharpe and Mrs. Sharpe to J. F. Kirby, and from J. F. Kirby to Mrs. Sharpe are of no validity.

Complaint is made of the action of the court in permitting the defendant to cross-examine the plaintiff James A. Sharpe as to matters not testified to by him in his direct examination. The matter of cross-examination of a witness is largely within the discretion of the trial court, and, unless such discretion has been abused to the manifest injury of the complaining party, the case will not be reversed. Watkins v. United States, 5 Okla. 729, 50 Pac. 88; Yingling v. Redwine, 12 Okla. 64, 69 Pac. 810; Guthrie v. Carey, 15 Okla. 276, 81 Pac. 431; City of Lawton v. McAdams, 15 Okla. 412, 83 Pac. 429; Weleetka Light & Water Co. v. Burleson, 42 Okla. 748, 142 Pac. 1029; Kimberlin v. Ephraim, 41 Okla. 39, 136 Pac. 1097.

We fail to see wherein the plaintiffs suffered any manifest injury by reason of the cross-examination of the plaintiff James A. Sharpe, or that the court abused its discretion in permitting the defendant to in-

quire into the details of the transaction on cross-examination.

We have carefully examined the record, and conclude that the judgment of the trial court is right; such judgment is therefore affirmed.

KANE, JOHNSON -McNEILL, MILLER, and KENNAMER, JJ., concur.