## EYESTONE v. EYESTONE.

No. 13326—Opinion Filed May 20, 1924.

Rehearing Denied Sept. 16, 1924.

Second Rehearing Denied Oct. 14, 1924.

1. **Insurance—Change of Beneficiary—Incompetency of Insured when Change Made—Burden of Proof.**

In an action between two claimants to determine which is entitled to the proceeds of a mutual benefit certificate, each having been at different times designated as beneficiary, and where the one first designated assails the designation of the other upon the ground that the insured was insane and incompetent at the time of the latter designation, such claimant must sustain the burden of proof as to insanity and incompetency so affirmatively charged.

2. **Appeal and Error—Equitable Action—Review—Disposition.**

In a purely equitable action this court is authorized to examine and consider all the evidence, and where the judgment of the trial court is clearly against the weight of the evidence and contrary to law, to render or cause to be rendered such judgment as the evidence and the law authorize.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Muskogee County; E. A. Summers, Judge.

Action by Otis Raymond Eyestone, against Bertha Aloura Eyestone and Order

of Railway Conductors of America, to recover the face value of a beneficiary certificate issued to Ottie R. Eyestone. Judgment for plaintiff, and defendant Bertha Aloura Eyestone brings error. Reversed, with directions.

This action was commenced in the district court of Muskogee county, Okla., December 24, 1920, by Otis Raymond Eyestone against Bertha Aloura Eyestone and the Order of Railway Conductors of America to recover the sum of $1,500, being the face value of a beneficiary certificate issued by the Order of Railway Conductors upon the life of Ottie R. Eyestone, who died November 24, 1920.

Plaintiff's petition alleged, in substance, the issuance of the certificate; that plaintiff appeared as beneficiary therein; that Ottie R. Eyestone was dead, and that payment had been refused.

The defendant Bertha Aloura Eyestone answered, claiming title to the fund covered by said certificate by virtue of a change in beneficiaries made by the deceased, and denying that plaintiff was entitled thereto.

The answer of the Order of Railway Conductors admitted the existence of liability, but asserted the conflicting claims of plaintiff and its codefendant, disclaimed any interest in said fund, and tendered the same into court with the prayer that it be released from all further liability and for costs.

Plaintiff filed a reply in which he admits that an effort was made to change the beneficiary in said certificate, but alleges that such change was never effected for the reason that Ottie R. Eyestone was incompetent and insane at the time of said attempted change of beneficiary, and was incapable of transacting any business or realizing the consequences or nature of any action attempted to be done by him.

Upon the issues thus presented the case was tried to the court without a jury on August 10, 1921, and after the evidence was concluded the case was taken under advisement by the court and judgment thereafter rendered in favor of the plaintiff December 14, 1921. After unsuccessful motion for new trial, the defendant Bertha Aloura Eyestone has brought the case to this court for review by petition in error with case-made attached. Otis Raymond Eyestone will be hereinafter referred to as plaintiff, Bertha Aloura Eyestone as defendant, and the Order of Railway Conductors of America as the Order.

Carl Kruse, for plaintiff in error.

C. A. Armbrister and Bower Broaddus, for defendant in error.

Opinion by LOGSDON, C. Several specifications of error are presented and argued in the brief of the defendant, but as this is an equitable proceeding, the only specification which is deemed necessary to discuss in reaching a conclusion is the third, which reads:

"The judgment of the trial court is contrary to the evidence."

In this case the trial court made no findings of fact nor stated any conclusions of law, but merely made a general finding in favor of the plaintiff and against the defendant. This being an equitable action this court is authorized to examine and consider all the evidence, and where the judgment is clearly against the weight of the evidence and contrary to law, to render or cause to be rendered such judgment as the evidence and the law authorize. Pevehouse v. Adams, 52 Okla. 495, 153 Pac. 65; Marshall v. Grayson, 64 Okla. 45, 166 Pac. 86; Martin v. Bruner, 64 Okla. 82, 166 Pac. 397; Lee v. Little, 81 Okla. 168, 197 Pac. 449; Keechi Oil & Gas Co. v. Smith, 81 Okla. 266, 198 Pac. 588.

The abstract of the testimony adduced upon the trial of this case may be fairly stated thus: Ottie R. Eyestone took out a beneficiary certificate in the Order dated January 19, 1917, in which his wife, Eva M. Eyestone, was named as beneficiary; sometime thereafter he and his wife, Eva, were divorced at Wichita Falls, Tex., and on October 24, 1918, he had the beneficiary in said certificate changed, naming the plaintiff, who was his son, as such beneficiary; in June, 1920, he married the defendant, and on October 25, 1920, delivered his certificate to the secretary of the local lodge of the Order at Enid, Okla., with instructions to forward same to the general secretary at Cedar Rapids, Iowa, with a request to again change the beneficiary, naming the defendant instead of the plaintiff; immediately after doing this Ottie R. Eyestone went to St. Louis, Mo., and entered the Frisco hospital; in due course of mail the certificate and letter of instruction was received by the general secretary at Cedar Rapids, who thereupon filled out a printed form prepared in conformity to the laws and rules of the Order for a change of beneficiary and mailed it with the certificate attached to Ottie R. Eyestone at Enid, Okla., in care of the local secretary; upon its receipt at Enid it was forwarded by the local secretary to Ottie R. Eyestone at the Frisco hospital in St. Louis; it was there signed and sworn to by Ottie R.

Eyestone before a notary public on November 5, 1920, and by him returned to the local secretary at Enid, who duly forwarded same to the general secretary on November 16, 1920, the general secretary again returned all papers to the local secretary at Enid with instructions to furnish a certified copy of the decree of divorce from Eva M. Eyestone; this certified copy was procured from Wichita Falls and all papers, including the certified copy, were again forwarded to the general secretary at Cedar Rapids, where it was duly received, as he states, "between November 22 and December 2 and probably on November 24, 1920"; Ottie R. Eyestone died about 1:30 p. m. November 24, 1920; it requires 36 hours for mail to be delivered between Enid and Cedar Rapids; the decree of divorce was mailed from Enid November 22, 1920, properly addressed with postage prepaid; November 28, 1920, the general secretary received a telegram from the plaintiff at Pittsburg, Kan., stating that his father, Ottie R. Eyestone, was irrational at the time he requested the change of beneficiary and for this reason the general secretary failed to make the change, although he states that the application and the proof submitted fully complied with all of the requirements of the Order for change of beneficiary.

Under the issues raised by the pleadings in this case only two questions were presented to the trial court for determination: First, was the request for change of beneficiary and the formal proofs furnished thereafter a compliance with the regulations and laws of the Order? Second, if the requirements of the Order were complied with in connection with the request for change of beneficiary, did plaintiff sustain the burden of proof resting upon him to establish the insanity and incompetency of his father at the time the request for change was made, as affirmatively alleged in his reply?

No serious effort was made by plaintiff to raise an issue of fact on the first question in the trial court. The testimony is without dispute that on October 25, 1920, before he left for the hospital, Ottie R. Eyestone caused a letter to be written and mailed from Enid to the general secretary of the Order requesting that defendant be substituted for the plaintiff as beneficiary in the certificate, which certificate was enclosed in said letter. The receipt of this letter is established by undisputed testimony that in due course of mail there was sent to Ottie R. Eyestone, via Enid, an application on an approved form of the Order for this change of beneficiary, properly

filled out when received by him, except as to information required as to his divorce from Eva M. Eyestone. This approved form of application was signed and sworn to by Ottie R. Eyestone before a notary public in St. Louis, Mo., November 5, 1920, and returned to and received by the general secretary in due course of mail. No contention is made that this approved form of application was in substance different from the request contained in insured's letter of October 25. On November 16 the general secretary asked for certified copy of divorce decree. No other objection to the sufficiency of the application was suggested. This certified copy was furnished. On cross-examination the general secretary of the Order, C. E. Whitney, testified:

"Q. Did the information which was forwarded to you comply with the requirements as specified by your constitution and by-laws? A. Certified copy of the decree between Ottie R. Eyestone and Eva M. Eyestone furnished the information which was missing on the original formal application for change of beneficiary, and was considered by me a compliance with the laws of the organization." (C. M. p. 65.)

On direct examination Mr. Whitney had testified:

"Q. Was it acted upon? A. It was given attention, but not approved. Q. Why not? A. Due to telegram received from son of applicant indicating that Ottie R. Eyestone was irrational at the time he requested change of the name of the beneficiary, which telegram was dated November 28, 1920, at Pittsburg, Kan." (C. M. p. 61.)

Article 24 of the by-laws of the Order, relating to change of beneficiary, reads:

"A member desiring to make a change in the named beneficiary or beneficiaries may do so with the consent of the department by making requests therefor upon blanks provided for that purpose. A written request for change of beneficiary, together with certificate of membership, must be forwarded to the general secretary and treasurer, who shall make such change by notation on the certificate in accordance with such request; provided such designation is in accordance with the laws of the department and all other conditions have been complied with. A change of beneficiary hereunder shall be effective at twelve o'clock, noon, central standard time, of the date upon which the change is approved by the general secretary and treasurer." (C. M. p. 62.)

It is therefore established by the testimony, and without dispute, that Ottie R. Eyestone during his lifetime complied with all of the requirements of the Order for effecting a change of beneficiary. This dis-

poses of the first question presented to the trial court.

Upon the second question above stated the burden of proof rested on plaintiff. Sanity and competency, like honesty and fair dealing, are supported by a legal presumption. One alleging fraud must prove it, or, in equity, prove circumstances from which fraud may be fairly inferred, and one alleging insanity and incompetency must sustain a similar burden.

To sustain this burden plaintiff introduced the depositions of the hospital physician, nurses, and attaches. Dr. R. A. Woolsey had been the hospital physician for about 17 years, and testified to a, long experience in the observation and treatment of patients suffering from nephritis, Bright's disease, which was the disease with which Mr. Eyestone was suffering. He testified that when Mr. Eyestone was received at the hospital, about October 28, he was in an advanced stage of this disease; that this disease affects the kidneys, destroying their function as a filter, resulting in uremia, or poisonous absorption, which renders the patient dull, stupid, sleepy, and eventually delirious (C. M. p. 156); that when he was received his mind had not been affected appreciably and he could hold conversations (C. M. p. 157); that he was assigned to room 308, but owing to the progress of the disease, resulting in restlessness, weakened mentality, and delirium, he was removed to room 322 on November 8; that up to this date the patient always recognized witness; that he never recognized him after the 8th. (C. M. p. 159.)

On cross-examination the doctor testified that when Mr. Eyestone came to the hospital he was rational and had worked as a railroad conductor right up to the time he came there; that there was no cause for saying he was not in his right mind prior to coming there. (C. M. p. 165.)

The testimony of the nurses and attaches of the hospital was to the same general effect as that of the doctor.

It is not deemed necessary to abstract the testimony in support of competency, for the reason that the testimony introduced by the plaintiff not only fails to show mental incompetency on October 25th, when the request for the change of beneficiary was made, but on the contrary

shows that he was mentally competent when received at the hospital, and continued so, except possibly for brief intervals, until November 8th. It is shown, however, that as late as November 14th, one J. R. Dunworth, a life-long friend, visited Mr. Eyestone at the hospital and in a conversation Mr. Eyestone described by legal descriptions to Mr. Dunworth certain oil leases which he held: named certain creditors to whom he owed various sums, and discussed other matters connected with the administration of his estate, thus showing a realization of his condition. This testimony is not impeached or disputed. These legal descriptions and these debts were afterward checked by Mr. Dunworth and found to be correct.

There can be no question under the testimony shown in this record that Mr. Eyestone was fully competent on October 25th, when he designated his wife, this defendant, as his beneficiary and requested the change in his certificate. What was thereafter done in effecting his expressed wish was done for the benefit of the Order and in compliance with its rules and laws. Its requirements were fully complied with before Mr. Eyestone died. The Order is satisfied and admits liability. Those requirements did not necessitate any new affirmative choice by Mr. Eyestone, but merely carried out his clearly expressed wish made at a time when no one has suggested that he was incompetent. They merely confirmed, in the mode selected by the Order for its own protection, the legal right of Mr. Eyestone to change his beneficiary, which legal right he had exercised.

It is, therefore, concluded that plaintiff failed to sustain the burden of proof resting upon him under his affirmative allegations that his father was insane and incompetent at the time of application for change of beneficiary.

This being an equitable proceeding, and the judgment of the trial court being clearly against the weight of the evidence and contrary to law, the judgment should be vacated, with directions to the trial court to enter judgment in favor of defendant for the fund involved and now on deposit in that court.

By the Court: It is so ordered.