**LANE et al. v. FLOWERS, Sheriff, et al.**

No. 24479.   Sept. 10, 1935.

R. Emmett Stewart, Cleon A. Summers, and W. T. Drake, for plaintiffs in error.

C. E. Castle and E. J. Broaddus, for defendants in error.

PER CURIAM. The plaintiffs and defendants occupy the same relative positions that they occupied in the trial court; therefore, they will be referred to herein as plaintiffs and defendants. The plaintiffs filed their petition in the district court of Wagoner county, in which they prayed for an injunction against the defendants to enjoin the sale of 120 acres of land under execution issued on a general judgment against the plaintiffs and others. The plaintiffs contend that the said land is the homestead of the plaintiffs, and therefore is exempt from sale under execution. The trial court, after hearing the evidence, found that the land was not the homestead of the plaintiffs and made an order denying their prayer for a permanent injunction. The plaintiffs have perfected their appeal from such order to this court.

There is only one question presented by this appeal that is necessary to determine in order to reach a conclusion. That question is:

"Was the finding of the trial court that the land involved was not the homestead of the plaintiffs clearly against the weight of the evidence,"

This is an equitable action and in such a case this court will consider and weigh the evidence, and if it finds the decree of the trial court to be clearly against the weight thereof, will render or cause to be rendered such decree as the trial court should have rendered. Foster v. Vickery, 111 Okla. 231, 239 P. 141; Pevehouse v. Adams, 52 Okla. 495, 153 P. 65; Marshall v. Grayson, 64 Okla. 45, 166 P. 86; Martin v. Bruner, 64 Okla. 82, 166 P. 397; Hart v. Frost, 73 Okla. 148, 175 P. 257; Lee v. Little, 81 Okla. 168, 197 P. 449.

Briefly stated, the record reflects this state of facts: The plaintiff I. W. Lane moved to the town of Redbird when he first came to this country in 1908 or 1909, and built a home in the town; went into the gin business about 1910; bought 40 acres of land near the town in 1915; and he says:

"After the two years I owned the first 40 I farmed it, and then bought the second 40, and I put a little house on it, had a little shack over in the field and I put it up there where I wanted my house, moved it from the place where it was over in the field and moved it up where I intended to live, and put a small barn there, corn crib, and a year or two after, that I built a large barn there, 28 by 32, and in the meantime I drilled a well and built it up with brick, and during that time I set out an orchard and fenced it up with wire fence, with the idea and intention of living there some day when I could put up something to live in."

We went out of the gin business in 1920 or 1921; bought the third 40 in 1927. No improvements were put on the place after about 1922. His son has lived on the place for about 10 years and farmed part of it on a third and fourth. His son has a wife and five children. Another party has been share cropping a part of the land. Lane farmed a part of the land himself and had a davenport down there that made into a bed and he used it to sleep on when he was at the farm. He testified as follows:

"The Court: What you mean is that you lived there in Redbird and would go down to the farm and sometimes you would stay all night there? A. Yes, sir. Sometimes when I worked hard that day, that evening or night it would be late, and I just stayed over there at night. I am on the farm about every day."

He was on the town board for two terms and served until about two years ago; has voted at the town elections. He owns the house in Redbird and has lived in the same house since it was built in 1908 or 1909. It is about as nice a house as there is in the town; six room house with nine lots; has been married three times and married his present wife shortly after buying the first 40 acres; his wife has not said which piece of property she claims as a homestead, "She has not said one way or the other." He

had put all the improvements on his farm, except the one-room addition to the house, before he sold the gin, over ten years ago.

This court has repeatedly held the homestead character may be impressed upon premises, without actual occupancy, provided the claimant has a fixed intention to make a home thereon, and such intention is evidenced by overt acts of preparation of such premises for a home, but the actual occupancy of said premises, or an attempt in good faith to occupy the same, must follow the overt acts of preparation without unreasonable delay. Sharpe v. Wright, 88 Okla. 16, 211 P. 70; Osmon et ux. v. Payton, 98 Okla. 194, 223 P. 382; Storm v. Garnett, 99 Okla. 284, 227 P. 417; Davis v. First State Bank, 65 Okla. 211, 166 P. 92; Greenwood et al, v. Wilkinson, 124 Okla. 300, 256 P. 46.

In the case at bar the evidence conclusively shows that the plaintiff Lane has lived in the property in the town of Redbird for over a period of 20 years, and in fact has never lived on the farm land that he is now claiming as his homestead. It is true he has made certain improvements on the farm and at times in the past made expressions of his intention to at some future time make his home on the farm. However, after considering the evidence in this case, this court must conclude that the improvements are as consistent with improvement for rental purposes as for homestead purposes. Further, that his declarations of intention to use the farm as his homestead are completely silenced by his own acts of remaining in the home in town for a number of years after making such declarations and for a period of over ten years after making the last improvements on the farm.

We therefore conclude that the judgment of the trial court is sustained by the evidence, and is affirmed.

The Supreme Court acknowledges the aid of Attorneys L. L. Corn, Tom L. Ruble, and E. S. Collier in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Corn and approved by Mr. Ruble and Mr. Collier, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur.