## PEVEHOUSE et al. v. ADAMS et al.

No. 5845.   Opinion Filed November 16, 1915.

(153 Pac. 65.)

1. **FRAUD—Proof—Requisites.** Fraud must be shown and proved at law; but in equity, it is sufficient to show facts and circumstances from which fraud may be presumed.

2. **APPEAL AND ERROR—Decision on Appeal—Equity.** In a purely equitable case, this court will consider the whole record, weigh the evidence, and where the judgment of the trial court is clearly against the weight of the evidence, will render or cause to be rendered such judgment as the trial court should have rendered.

3. **GUARDIAN AND WARD—Parent and Child—Good Faith in Transactions Necessary.** When the fiduciary relation of guardian and ward or parent and child exists, equity requires the utmost degree of good faith in transactions between the parties.

4. **DEEDS—Fraud—Undue Influence—Consideration—Sufficiency of Evidence.** The entire evidence in this case examined, and the weight thereof found not to sustain the judgment of the trial court.

(Syllabus by Collier, C.)

*Error from District Court, Okmulgee County;*
*Wade S. Stanfield, Judge.*

Action by Salina Pevehouse and others against Wash Adams and others.   Judgment for defendants, and plaintiffs bring error.   Reversed and remanded.

*Burke & Harrison (Van Albertson,* of counsel), for plaintiff in error.

*Charles A. Dickson* and *C. W. Holbrook,* for defendants in error.

Opinion by COLLIER, C.   Three cases, instituted respectively by Salina Pevehouse, Ben Harjo, and Cinda Bevenue, against Thomas, Walsh, and Lewis Adams, were, by agreement and order of court, consolidated with a

similar case brought by Geo. A. Smith as trustee, against said defendants, and all of said cases were tried together as one case, and so appealed to this court.

The action was brought to cancel certain deeds, executed respectively by Salina Pevehouse, Ben Harjo, and Cinda Bevenue to said Thomas, Wash, and Lewis Adams, upon the ground that said deeds were procured through fraud, coercion, misrepresentation, undue influence, and for a grossly inadequate consideration.

The lands in controversy were the allotments respectively of Litiff and of his wife, Mary Harjo, full-blood Creek Indians, the father and mother of said Salina, Ben, and Cinda. Litiff died some time in 1900, and Mary died April 4, 1905. At the time of the death of said Mary, Ben Harjo was 17 years of age, Salina 16, and Cinda 14. Mary made a purported will, in which Thomas J. Adams, the father of said Wash, Thomas, and Lewis Adams, was named as executor and guardian of said Salina, Ben, and Cinda, in view of the said Mary and her husband's confidence in the ability and character of her said brother and his supposed affection for and interest in said children. Said will provided that the property be held "in trust for my five beloved minor children, providing he holds said estate until the youngest becomes of age, when it should be divided among them in kind." Said Thomas J. Adams took charge of the estate, and said minor children of Mary; the children living in the home of said Thomas J. Adams, near Beggs, Okla. Thomas J. Adams died in 1910. On July 15, 1909, Salina sold her undivided interest in the allotments of her father and mother to Wash, Lewis, and Thomas Adams, for $500, while she was yet living with her uncle and guardian, Thomas J. Adams. On August 14, 1909, Ben Harjo sold his interest in the

allotments of his father and mother to the same three brothers, for a consideration of $300, that being the second deed to them; the first deed having been made before said Ben became of age, and both deeds having been made while he was living with his said guardian. On July 15, 1909, Cinda Harjo, now Cinda Bevenue, sold her interest in said allotments to these three brothers for a consideration of $300, while she was yet living with her uncle and guardian, the said Thomas J. Adams. On March 12, 1911, Lewis Adams sold his one-third interest in said two allotments for a named consideration of $4,000 to his wife, Annie Adams.

The evidence in this case is very voluminous, and no good purpose could be served by setting it out *in extenso.* We have carefully read the entire record and are forced to the conclusion that the weight of the evidence shows that the several deeds complained of were obtained by undue influence exercised by Thomas J. Adams, the guardian of said plaintiffs, and in accord with the advice and threats of said guardian, who is shown to have been an attorney at law, at one time Chief Justice of the Creek Supreme Court, a town king, and a man of unbending will power, who exercised despotic control over his family; that said conveyances were secured while the grantors were residing with their said guardian as members of his family, and that each of plaintiffs evidently feared to displease him and felt bound to obey his instructions and advice; and that he was aided by his said three sons, to whom said lands were conveyed, to secure said deeds through fraud, threats, and intimidation, concocted and carried out by Thomas J. Adams and his said sons, for a grossly inadequate price. As their legal guardian, and especially in view of the fact that the relation also of

parent and child, in effect, existed between the said Salina, Ben, and Cinda and the said Thomas J. Adams, and the said Salina, Ben, and Cinda had been committed by their dead mother to the special care of their said uncle, and resided with him, it was his duty to throw around the said grantors, Salina, Ben, and Cinda, his strong, protective arms, and prevent, as he might easily have done, the sale of their property for an inadequate price. This duty he not only failed to perform, but he was the controlling spirit in wrongfully securing the property of his said wards for his own sons. Where fiduciary relation, like guardian and ward, or parent and child, exists, as in this case, in order to prevent undue advantage from unlimited confidence, affection, or sense of duty, which the relation naturally creates, the utmost degree of good faith in all transactions is required. Story's Eq. Juris. 218; *Robins v. Hope,* 57 Cal. 493. In short, plaintiffs were but "clay in the hands of their potters," Thomas J. Adams and his three sons, who moulded them as best suited the interests of him and said sons; and it would be difficult to cite a case in which the trust imposed by a confiding sister to her brother, for the protection of her minor children, was more grossly betrayed than by old man Thomas J. Adams in the instant case.

The evidence shows that the consideration named in said several deeds was grossly inadequate, when the lands conveyed are valued only for farm lands; and when to this is added their prospective value for oil and gas, the considerations paid for said lands were "so grossly inadequate as to shock the conscience."

The *bona fides* of the claim of Annie Adams that under the deed to her, executed by Lewis Adams, her husband, for one-third undivided interest in said lands,

for the recited consideration of $4,000, she is an innocent purchaser, is not supported by the weight of the evidence; and under the weight of the evidence, she must be held to have acquired this deed with full knowledge of the infirmities of her vendor's title, and that the recited consideration paid was fictitious, and said consideration never paid. It is true that, in attempting to support said conveyance of said interest, a statement of a bank is in evidence, showing that she had at various times deposited considerable amounts of money in said. bank; but it further shows that at the time said deed was executed to her by her said husband said money had been expended, with the exception of a few hundred dollars. The contention that the money expended from her deposits was used by or paid to her said husband, is not supported by the weight of the evidence.

The evidence on the part of defendants shows that they have made improvements upon said lands, and that they have been in possession and control thereof from the time they claim to have purchased said lands, and have enjoyed the incomes thereof; that said deeds were approved by the county court of Okmulgee county, upon application of said grantors. But the undisputed evidence is that the court, prior to approving said deeds, did not inquire as to the value of the lands being sold; and that in said application and statements in regard thereto, the several grantors were directed and controlled by said grantees in said deeds, Thomas, Wash, and Lewis Adams.

The court made the following findings of fact:

"The allegations of the original plaintiffs in this case, together with that of the trustee, Smith, are in substance: That deeds to the defendants in this case were procured by the defendants, Wash Adams, Tom Adams, and Lewis

Adams, through fraud, misrepresentation, overpersuasion, threats, undue influence and without adequate consideration, and were void, and for that reason they were not subject to conveyance; and that they were full-blood Creek Indians and all inherited lands.

"The court is of the opinion that the testimony in this case fails to support the contention of the plaintiffs, that these deeds were procured through fraud, misrepresentation, overpersuasion, threats and undue influence. The court is further of the opinion that under this will, the plaintiffs, Salina Pevehouse, Ben Harjo and Cinda Bevenue could part with their equitable interest by deed or otherwise, and having parted with it, they cannot maintain these causes of action.

"The court is further of the opinion that George A. Smith, as trustee for the two minors, has failed to sustain the allegations of his petition, so as to entitle him to any relief in this cause. The court does not express an opinion as to whether or not, should it become necessary on his part, for the care and maintenance of these minor children, he could dispose of the entire estate, but holds simply that at this time he has simply not established any rights in this cause of action.

"Judgment is against the plaintiffs for the costs of these actions."

Motion was filed by plaintiffs for a new trial, which was overruled and duly excepted to. To reverse said judgment this appeal is prosecuted.

This is purely a case of equity, and in such cases this court will consider the whole record, weigh the evidence, and where the judgment of the trial court is clearly against the weight of the evidence, will render, or cause to be rendered, such judgment as the trial court should have rendered. *Success Realty Co. v. Trowbridge,* 50 Okla. 402, 150 Pac. 898; *Asher v. Doyle,* 50 Okla. 460, 150 Pac. 878; *Shock v. Fish,* 45 Okla. 12, 144 Pac. 584.

It seems that a less degree of proof is required to establish fraud in equity than in law. *Myrick v. Jacks*, 33 Ark. 425; *Lester v. Mahan*, 25 Ala. 445, 60 Am. Dec. 530; *Arnold v. Grimes*, 2 G. Green (Iowa) 77; *Orton et al. v. Madden et al.*, 75 Ga. 83.

"Fraud must be shown and proved at law. In equity it suffices to show facts and circumstances from which it may be presumed." *(Bottoms v. Nekirchner*, 29 Okla. 104, 116 Pac. 434; *Myrick v. Jacks, supra.)*

"Less evidence is necessary to establish undue influence to obtain the execution of a deed when relations of trust and confidence, as parent and child, guardian and ward, trustee and beneficiary, attorney and client, physician and patient, nurse and invalid, exist than might be required in other cases." (Devlin on Real Estate, sec. 84.)

This court, in the case of *Bruner v. Cobb*, 37 Okla. 228, 131 Pac. 165, enunciated the doctrine applicable to this case in these words:

"Ordinarily mere inadequacy of consideration is not sufficient ground, in itself, to justify a court in canceling a deed; yet when the inadequacy is so gross as to amount to fraud, or in the absence of other circumstances, to shock the conscience, and furnish satisfactory and decisive evidence of fraud, it will be sufficient ground for canceling a conveyance or contract, either executed or executory. The rule being based upon the theory that fraud, and not inadequacy of price, is the sole reason for the interposition of equity."

From the view we take of this case, it is unnecessary to consider the effect of the will, as to the rights of the beneficiaries therein named to dispose of their interests in said property, prior to the youngest of said heirs becoming of age, and we do not do so.

We are of the opinion that the findings of the court are not supported by the weight of the evidence.

It follows that this cause should be reversed and remanded, with instructions to set aside and hold for naught the deed executed by Ben Harjo, on August 12, 1908, to Lewis Adams, Thomas Adams, and Wash Adams, and that the deed executed by Cinda Harjo, now Cinda Bevenue, to said Lewis, Thomas, and Wash Adams, on July 15, 1909, and the deed executed on the 4th day of October, 1909, by Salina Harjo, now Salina Pevehouse, to Lewis, Thomas, and Wash Adams, and the deed executed by Lewis Adams to his wife, Annie Adams, be set aside and held for naught; that an account be taken of the rents, incomes, and profits derived from said lands during the time defendants have had possession of said lands; and "as he who asks equity must do equity," that the amounts so received by the said respective grantees shall be credited with the amounts paid by said Thomas, Wash, and Lewis Adams for said lands, and for all lasting and valuable improvements made thereon by them, or either of them; and that if the same be in excess of the said incomes, profits, and rents received by said Lewis, Thomas, and Wash Adams, plaintiffs be required to pay them such balance so found to be due, in order to restore the *status quo* of said parties at the time said deeds were executed; and that the said Wash, Thomas, and Lewis Adams have a lien upon said lands for the payment thereof.

By the Court: It is so ordered.