## CLOUD v. YOUNG et al.

No. 13959—Opinion Filed Sept. 30, 1924.

1. **Cancellation of Instruments — Quieting Title—Gist of Action—Equity Rules.**

Where suit is brought for cancellation of instruments, and to quiet title to real estate and for rents and profits as damages, the gist of the action is for cancellation of instruments, and presents a cause for purely equitable cognizance, and the rules in equity cases apply.

2. **Same—Action to Cancel for Fraud— Proof.**

Where suit to cancel written instruments is predicated on fraud in procuring the execution of such instruments, the fraud alleged in the petition must be proven directly, or by proof of such circumstances from which fraud will be inferred, by a preponderance of the evidence so great as to overcome and outweigh all opposing evidence, and repel all opposing presumptions of honesty and fair dealing, and the import of verity on the face of the instruments attacked.

3. **Appeal and Error—Review of Equity Case—Sufficiency of Evidence.**

In the examination and review of cases of purely equitable cognizance, on appeal, it is the duty of the appellate court to consider the entire record and weigh the evidence, but, unless the findings of the trial court on questions of fact are found to be against the clear weight of the evidence, the findings will not be disturbed on appeal, nor the judgment set aside because not supported by the evidence.

4. **Appeal and Error—Cross-Petition in Error—Sufficiency.**

Where the defendant in error has filed a motion for a new trial in the trial court in due course, and upon the overruling thereof, has given notice of appeal as provided by law, and thereafter the plaintiff in error completes his appeal by filing in the Supreme Court a petition in error to which is attached a complete record as made in the case in the trial court, duly settled and signed as a case-made, and the defendant in error within six months after the rendition of the judgment complained of files a cross-petition in error in the Supreme Court in which reference is made to the case-made as attached to the petition in error, and by such reference the case-made is made a part of the cross-petition in error, such cross-petition in error confers jurisdiction on the Supreme Court to review the errors assigned in the cross-petition in error.

5. **Judgment Sustained.**

Record examined: and held, that the judgment of the trial court is not against the clear weight of the evidence: and held, that the judgment in its entirety should be affirmed.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Creek County; Lucien B. Wright, Judge.

Action by Nancy Cloud, now Harry, against Benjamin Young and Everett Young. Judgment in part for defendants. Plaintiff appeals. Judgment in part for plaintiff. Defendants cross-appeal. Affirmed.

R. K. Robertson and J. M. Addle, for plaintiff in error.

Cheatham & Beaver, for defendants in error.

Opinion by SHACKELFORD, C. The plaintiff in error was the plaintiff below, and the defendants in error were the defendants. The parties will be referred to herein as plaintiff and defendants as they appeared in the trial court.

The plaintiff brought action for the cancellation of two certain conveyances purporting to have been executed by her, and purporting to convey interests in and to the land described as the southeast quarter of

section nine (9), township fourteen (14) north, range nine (9) east, and for rents and profits, and to quiet title. The plaintiff, who is a Creek Indian, claims title by inheritance from her daughter, a Creek Indian, and to whom the land was allotted, and who died intestate, leaving her surviving this plaintiff, the mother, and Benjamin Wisener, the father, as her heirs at law. The plaintiff claims to be the owner of an undivided one-half interest in the said land. The plaintiff complains, in her amended petition on which the cause was tried, that the defendant Benjamin Young, by himself and by and through his agent, fraudulently induced her to execute in his favor a quitclaim deed dated April 20, 1909, purporting to convey to said defendant an estate for the life of the plaintiff in the land, that while the deed recites a consideration of $600, nothing was ever paid her for the conveyance, that plaintiff did not know, at that time, what interest she owned in the land, and that said defendant and his agent knowingly made false, fraudulent and misleading representations to her about her interest in the land, which she relied upon, and was thereby induced to make the conveyance because of mistake as to what her interests in the land were; she attaches a copy of the deed; the deed appears to have been approved on the day it was executed. She further charges that afterwards, and on the 4th of February, 1911, she was induced by false and fraudulent representations of the defendant Benjamin Young and his agent, as to the value of the land, to execute in favor of said defendant a deed conveying the land in fee. She charges that they falsely represented to her and to the county judge who approved the deed that the land was worthless except for grazing purposes, when in fact it is good agricultural land, worth $100 per acre; that they made false representations to her and to the county judge who approved the deed as to what was to be paid for the land, representing that defendant had or would pay her $1,000, and agreed to pay plaintiff said amount, when the deed should be approved; that the defendant and his agent falsely and fraudently represented to the plaintiff and to the county judge that plaintiff had no interest in the land; that all of said representations were false and fraudulent and known to be so by defendant, and were made for the purpose of deceiving plaintiff, who was an ignorant Indian woman, and were made to the county judge for the purpose of deceiving him, and both the plaintiff and the court were deceived, and plaintiff executed the deed and the county judge approved it; that in fact, plaintiff owned an undivided one-half interest in the land, and defendant never paid any of the recited consideration, but defendant's agent had given her a $5 gold piece, and a trade coupon of the face value of $10 payable in goods at the agent's store; that defendant Benjamin Young told her that she had no interest in the land and that was the reason why he would not pay as he had agreed; that plaintiff did not learn of the fraud that had been practiced upon her until in the early part of 1917, and had made demand for her land without avail; that she had a contract with counsel to bring action, and when the contract was filed of record the defendant Benjamin Young deeded the land to defendant Everett Young. She seeks to recover rents and profits in addition to cancellation of the instruments, and to quiet title to her one-half interest in the land.

The defendants answered by general denial except matters admitted. They allege the due execution and approval of the first deed, and rely thereon. They allege the due execution and approval of the second deed, and that at the hearing before the approval agency the matter of consideration was inquired into and determined; that for the two deeds defendant Benjamin Young paid the sum of $900, which is alleged to be adequate consideration. They specifically deny that there were any false or fraudulent representations made to secure the execution of the deeds by plaintiff or to secure the approval thereof by the county judge, or that they ever promised to pay to plaintiff $1,000 consideration on approval, or any consideration other than that which is recited in the deeds, which is alleged to have been fully paid. The defendants plead and rely upon a certain judgment taken in plaintiff's favor against Benjamin Young to establish payment of the consideration.

The plaintiff replied by denial except as to certain matters admitted. She reiterates her allegations of fraud in procuring the first deed, going more into detail as to what the alleged fraud consisted of. She charges that the defendant Benjamin Young, and his agent, falsely represented to plaintiff that she had no interest in the land, when in fact she owned one-half of it, but was ignorant and did not know it; that defendant paid nothing for the conveyances, but falsely represented to the county judge that he had paid all the agreed consideration to procure an approval. She alleges that she filed a protest against the approval of a deed dated March 4, 1909, and that the deed of that date was disapproved; that later the defendant induced her to sign an

instrument which they called an additional petition in protest of the deed of April 20, 1909, and the deed was approved without the plaintiff being present or being examined by the court considering the same, or about the consideration agreed to be paid, and in fact the consideration has never been paid, and it was not known that the deed had been approved, but plaintiff was led to believe and understand that the deed had been disapproved. That the deed dated February 4, 1911, was procured from plaintiff on false representations that she had no interest in the land and that the land belonged to plaintiff's children, and that the full consideration had been paid her children and the deed was being taken to clear the title; that she believed the representations, but afterwards found them to be false. That the defendants knew they were false when making them, but the truth of the matter was not known to the court or there would have been no approval. That the deed upon its face shows that it was a part of the original transaction in which the quitclaim deed was taken, in that it seems to show that it was given for the purpose of correcting the quitclaim deed which conveyed only a life estate, while the latter deed purported to convey the fee title. That in truth and in fact the plaintiff inherited a one-half interest in the land. That the defendant secured the approval order by representing he was paying plaintiff $900, when in fact nothing was ever paid. Further replying she charges that a certain judgment taken in her favor and satisfied by her, and on which the defendant relies to show that part of the purchase money for her land was paid, grew out of a suit brought by her attorney in her name against defendant for agricultural rents, as it was represented to her, and had nothing to do with the consideration agreed to be paid her for the conveyance, and that the receipt signed by her was so signed upon the false representation made to her by defendant and his agent that such signing was necessary to procure her rents. That the whole matter was a scheme to defraud and cheat her out of her land, that the release of the judgment was never read by her and she did not know what it contained other than what was told her by the defendant and his agent.

The case was called for trial on the 17th of December, 1920. On the 27th of May, 1922, a journal entry of judgment was filed in the case. The court made certain findings of facts, in effect, that the deed dated April 20, 1909, and approved on the same date was not procured by fraud, that the consideration was paid and was adequate and passed the title to the land to the defendant during the life of the plaintiff. The court further found that the deed dated February 4, 1911, was procured by fraud of the defendant, and the approval thereof was procured by fraud upon the court. The judgment in accord with such findings, in effect, denies the relief prayed for as to the first deed, and grants the relief canceling the second deed; and denies relief to plaintiff as to rents and profits, but allows the plaintiff her costs. The plaintiff excepted to the judgment and filed a motion for a new trial complaining of the judgment of the court because it does not cancel the deed purporting to convey the life estate, or the deed dated April 20, 1909. The defendant did not except to the judgment in the journal entry, but filed a motion for a new trial complaining of the judgment of the court in that it canceled the deed purporting to correct the first deed, and had the effect of conveying the fee title in the property held and owned by the plaintiff. The plaintiff filed petition in error with case-made attached, in this court. The defendant filed a cross-petition in error, and refers to the case-made attached to the petition in error and by reference makes it a part of the cross-petition in error.

The plaintiff, as plaintiff in error, complains of the judgment of the trial court, in that it fails to cancel the quitclaim deed, but in effect decrees it to be a valid deed passing title from plaintiff to defendant for her life, because the judgment in that respect is not supported by the evidence, and is contrary to the law.

The plaintiff, as a witness in her own behalf, testified in substance and effect that she never signed the deed; that she did not sign any papers about the land because Benjamin Young told her she had no interest in the land; that she went before the court to sign a paper so her children could get the land; that she was not before the judge the time the deed was presented to him and approved. Afterwards she testified that she signed a paper but did not know that it was a deed, and then tacitly admits signing some sort of a petition; and then protested the approval of the deed because somebody had told her that Benjamin Young had cheated her; and the deed was disapproved; she then signed some other paper or papers but they were not read to her and she did not know what they contained; when she acknowledged the papers before the court she was not questioned by the judge, but told the court the papers were alright because Benjamin Young told her to say that; that Young told her she could not

get any of the land because it belonged to her children; that Young owed her rents but never paid any of it, and told her that she would have to bring suit for the rents. It seems to be admitted that in fact the plaintiff was the owner in fee, by inheritance, of an undivided one-half interest in the land in controversy. This was about the substance of the evidence on the part of the plaintiff as to the first deed. The defendant's evidence tends to show that plaintiff came to defendant and wanted to sell him her interest in the land, claiming to own an undivided one-half interest, and wanted $600 for a deed running for her lifetime, and this was agreed to; that defendant was advised when they went before the county judge that the plaintiff owned only a life interest in the land; the first deed to which plaintiff agreed conveyed the fee, but this deed was disapproved; that at the beginning of the deal when the petition for approval was filed, defendant deposited with the county judge a $100 check, and in addition paid her the sum of $500; that at the time the deed was approved plaintiff was present and testified, and the judge himself wrote into the deed the words "her life estate in"; the judge refusing to approve the deed until those words were inserted; the defendant made no representations to the plaintiff that she had no interest in the property, but that plaintiff knew she had an interest in the property. It was admitted by the plaintiff that she was not wholly ignorant of the English language, but that she could talk and understand some English, and had, at a few times, acted as an interpreter. In addition to oral testimony concerning the quitclaim deed to the plaintiff's life estate in the property in controversy, dated April 20, 1909, there was introduced a number of exhibits. From these exhibits it appears that the plaintiff executed a quitclaim deed conveying to Benjamin Young all her right, title, and interest in the land, the deed being dated March 4, 1909. This deed recites a consideration of $600 in hand paid; signed by mark in the presence of witnesses. Also the plaintiff petitioned the county court to approve the deed. The petition for approval recites that $600 is consideration for the transfer, $100 being paid into court, and "$500 to petitioner which has been paid to her by Benjamin Young." The petition bears the same date as the deed. On the 5th of March, 1909, the plaintiff filed a protest against the approval of the deed dated March 4, 1909. In the protest she alleged that she had not been paid a single dollar as consideration. On the 20th of April, 1909, plaintiff filed an instrument in the county court that is denominated "statement of

facts and withdrawal of objections." Such statement of facts is not very illuminating, but we learn that the protest was filed because there was not a thorough understanding as to the price to be paid for the land. Appended to the same instrument is a "petition" in which it is recited that a full and complete understanding has been reached, and the court is asked to approve the deed. This instrument is signed by mark in the presence of witnesses, and sworn to before the county judge. On the same date the county judge made an order approving the deed dated April 20, 1909. The court recited in his findings that testimony was taken and that $600 consideration was adequate, that $100 had been deposited in court and the balance had been paid to the petitioner; and approved the deed. The deed was introduced, bearing the stamp of approval, and the acknowledgment was taken before the county judge. There is evidence in the record tending to show that the $100 deposited in court was paid to the plaintiff. The foregoing is practically all the evidence with reference to the deed of April 20, 1909 —the quitclaim deed passing title to plaintiff's supposed life estate in the land in controversy. The plaintiff seeks cancellation of the deed because of fraud practiced by the defendant and his agent on the plaintiff to get her to sign the deed and petition for approval, and because of fraud practiced upon the county judge to get him to make the order of approval.

Fraud, whether practiced upon the plaintiff to induce her to execute the deed, or upon the county judge to induce him to make the order of approval, must be proven, or such facts must be established from which the inference of fraud must follow as a consequence. It has been held that in a law case fraud must be proven, while in cases of purely equitable cognizance fraud may be inferred. Pevehouse et al. v. Adams et al., 52 Okla. 495, 153 Pac. 65. The gist of this action was to cancel the instruments executed by the plaintiff. Such relief must be obtained before any other relief sought can be granted. The instrument, upon its face, in connection with the approval by the county judge, purports to convey the title to the lands described so long as the grantor shall live. A suit to cancel such an instrument is one of purely equitable cognizance. Where fraud is alleged to have been resorted to to procure a written instrument, for the purpose of canceling the instrument, upon a trial the proof offered to establish fraud must sustain the allegations by a preponderance of the evidence so great as to overcome all opposing evidence and repel the opposing presumption of hon-

esty and good faith. Harn et al. v. Interstate Bldg. & Loan Co.. et al., 77 Okla. 265, 188 Pac. 343. Honesty and fairness in business dealing must be presumed where the parties are dealing at arm's length and are not in some fiduciary relation toward each other. Instruments executed are presumed to have been executed with knowledge of their contents and legal effect. When regular upon their face they import verity. and carry with them a presumption that they were honestly made for the purpose expressed therein. Before plaintiff is entitled to cancellation of an instrument because of fraud, his proof must be such as will overcome the presumption of honesty and fair dealing, and such as will overcome the import of verity upon the face of the instrument itself. And, where the charge of fraud is disputed by the evidence of the party assailed, the proof offered on the part of the complaining party must overcome and outweigh that offered in denial of the fraud.

In Rogers et al. v. Harris, 76 Okla. 215, 184 Pac. 459, this court said:

"Ordinarily where an action is predicated on fraud in the procuring of a written instrument, the proof must sustain the allegations by a preponderance so great as to overcome all opposing evidence and repel all opposing presumptions. of good faith."

In Ely Walker Dry Goods Co. v. Smith et al., 69 Okla. 261, 160 Pac. 898, this court held that:

"Fraud, though in equity it may be inferred from circumstances, must be shown and brought home to the opposite party by clear and convincing proof."

This, then, is the rule which must guide and control the trial court: the proof offered to sustain the allegations of fraud must be so clear and convincing as to overcome all opposing evidence and repel all opposing presumptions of good faith. This rule, in substance, was no doubt in the mind of the learned chancellor in the trial of the case. At the conclusion of the evidence he, in effect, found that the evidence offered upon the part of the plaintiff to establish her allegations of fraud as to this particular deed was not clear and convincing and did not outweigh and overcome the opposing evidence. and did not overcome the presumption of honesty and good faith. and did not overcome the import of verity upon the face of the instrument attacked. The case is now here on appeal. While the rule announced here is primarily for the guidance of the trial judge in the trial of the case, there is another rule frequently announced by this court, which is binding and controlling here. In equity cases on

appeal it is the duty of the Supreme Court to consider the whole record and weigh the evidence, but unless the finding of the trial court on the questions of fact are against the clear weight of the evidence, the findings will not be disturbed an appeal. This statement of the rule is in accord with the holdings of this court in Reuck v. Green, 84 Okla. 131, 202 Pac 790, Crocker v. Shurley, 86 Okla. 178, 207 Pac. 91, and York v. Trigg et al., 87 Okla. 214, 209 Pac. 417. We have carefully scrutinized the evidence as to the deed here in question. The plaintiff testified that she. was an uneducated Indian woman, unable to read or speak or understand the English language, but afterwards admitted that she speaks some English, and has acted as interpreter in some matters. She testifies that she never executed any deeds in favor of the defendant, but attorneys for plaintiff did not themselves accept such statement as the truth, as is clearly indicated by the form of the questions asked her, and the record clearly establishes the contrary. She testifies that defendant and his agent represented to her that she had no interest in the property, but she knew that the property was the allotment of one of her own children, who had died the owner of it. She says, in effect, that she relied upon and believed such representations, when many acts and statements of hers discredit the statement that she believed she had no interest in the property. The defendant testified that she, all the time, claimed an undivided one-half interest in the land. She testifies that the defendant represented to her that she could only hold the property for her life, but this the defendant denies, and the record tends strongly to show that the county judge himself was the one who thought she could hold the property for her life only. and did not own the fee, and it was he who wrote into the deed the limitation of the conveyance to her life. Plaintiff testifies that she was never paid anything for the conveyance, but afterwards admitted that she had received some money consideration. The defendant testified that he paid the full consideration as agreed between them. The instruments made exhibits recite consideration paid, and the order of approval made by the county judge seems to show that the judge was satisfied that the consideration had been paid as was agreed. That being the state of case as made out for the cancellation of the quitclaim deed, we are unable. to say that the trial judge was mistaken in his conclusion that the plaintiff's evidence did not preponderate over the opposing evidence to such an extent as to outweigh it and overcome it, and did not repel the presump-

tion of good faith and honesty in dealing, and did not repel the verity imported upon the face of the instruments. After an examination of the whole record, including all the evidence submitted as to the quit-claim deed, we are unable to say that the finding and conclusion of the trial judge is against the clear weight of the evidence. We have concluded that the finding and conclusion of the trial judge is supported by the record and is in keeping with the clear weight of the evidence. The judgment of the trial court in effect upholding the quit-claim deed made by plaintiff to defendant Benjamin Young should be upheld and affirmed.

In the review of the portion of the judgment of which the defendants complain, we are met at the threshold with the contention made by the plaintiff that this part of the judgment cannot be reviewed for the reason that the defendants did not attach a case-made to the cross-petition in error, and that the court is without jurisdiction to review the assignments of error for that reason. An examination of the record discloses that both the plaintiff and defendants filed motions for a new trial on December 6, 1921. Just when the case was closed and the judgment announced by the trial judge the record does not show. The journal entry of judgment was filed on the 27th of May, 1922. On the same day both motions for a new trial were presented and both were overruled; each of the parties gave notice of appeal, and each were given 60, 10, and 5 days in which to complete, serve, and settle case-made. Extensions of time were thereafter granted to plaintiff to complete and serve case-made. No extensions of time seem to have been granted to defendants in which to complete and serve case-made. The petition in error was filed in this court on the 21st of November, 1922, with case-made attached as exhibit "A". The stenographer's certificate attached to the case-made recites that "the foregoing is a full, true, complete and correct transcript of all my stenographic notes taken on the trial of said cause, of all the oral testimony together with the objections of counsel to the admission of any testimony herein, the rulings of the court thereon, exceptions saved, and all other proceedings had during the trial of said cause." And, "I have correctly copied all of the records in this cause from the records of the office of the court clerk within and for said county and state, which includes all pleadings filed and record had and made thereon as the same now appear." There is a recital at the close of the case-made that "the foregoing case-made contains a full, true, cor-

rect and complete copy and transcript of all the proceedings in said cause, including all pleadings filed and proceedings had, all the evidence offered and introduced by all parties, all orders and rulings made and exceptions allowed, and all of the record upon which the journal entries in said cause were made and entered, and the same is a full, true, correct and complete case-made." The clerk certified that it was a complete transcript of the record. The trial judge certified that it "is true and correct and contains a true and correct statement of all the pleadings, motions, orders, evidence, findings, proceedings and judgments had in said cause," and he settled and signed it as such. We must conclude from this evidence that "Exhibit A" as attached to the petition in error is a complete record of the case in every particular. The only thing left out is possibly the clerk's minutes made upon the announcement of the trial judge as to what his findings and judgment were at the close of the trial. If minutes were made by the clerk of such announcement, an incorporation of them herein could have added nothing to the orders contained in the journal entry filed later on. The cross-petition in error was filed in this court on the 27th of November, 1922. In the cross-petition in error the defendants complain of that portion of the judgment of the trial court in which the deed dated February 4, 1911, was canceled and set aside. Reference is made to the original case-made attached to the plaintiff's petition in error, and by such reference the case-made is made a part of the cross-petition in error. The plaintiff in error contends that the cross-petition in error presents nothing for review, and that the assignments of error cannot be considered here. However, there is no motion to dismiss the cross-petition in error. There is no contention made that the cross-petition in error was not filed within six months next after the rendition of the judgment from which the appeal is prosecuted. Substantially the same question arose in Strawn et al. v. Brady et al., 84 Okla. 66, 202 Pac. 505, and in Title Guaranty & Surety Co. v. Foster et al., 84 Okla. 291, 203 Pac. 231. In the latter case the court held:

"This brings us to the plaintiff's cross-appeal against the American Surety Company. The plaintiff, as cross-plaintiff in error, did not prepare and serve any case-made, nor file any case-made or transcript of the record in this court with his cross-petition in error, and it is contended that his cross-petition in error must be dismissed. The plaintiff did everything necessary to invoke the jurisdiction of this court to review that

part of the judgment adverse to him except prepare and serve a case-made and file the same in this court with his petition in error. The record shows that the cross-petitioner in error filed a motion for a new trial on the ground that the court erred in exonerating the American Surety Company from liability on its $500 lease bond executed by the guardian on the 9th day of November, 1903, conditioned to be void if the guardian leased the land of his ward with fidelity and well and faithfully accounted for all moneys, rents, profits, and other things of value received by him under such lease. The record also shows that he gave notice of his intention to appeal to the Supreme Court as required by section 5238 Rev. Laws 1910, as amended by the act of the Legislature approved March 23, 1917. Within the six months allowed for commencing proceedings in error plaintiff filed his cross-petition in error, assigning as error the action of the trial court in exonerating the company from liability on said $500 bond. His cross-petition in error will not be dismissed because he failed to prepare and serve a case-made, it appearing that a true and correct case-made was settled and signed in due time at the instance of the American Surety Compay and filed in this court. The making serving and filing of a separate case-made would have uselessly encumbered the record. Rules of procedure are not promulgated to defeat justice or to render its administration expensive, hazardous and inconvenient, but to reasonably aid in protecting and enforcing rights.

A similar question was raised in this court in the case of Yargee et al. v. McMillan et al., No. 15014, now pending in this court. The defendant in error moved to dismiss certain cross-petitions in error filed by some of his codefendants in error for the same reason that the plaintiff in error here now contends that the court should refuse to take jurisdiction of the appeal prosecuted in the defendants' cross-petition in error. This court overruled the motion to dismiss the cross-petitions in error, following the cases above cited, but without opinion. Substantially the same question was before the Kansas Supreme Court in Stattaner Bros. v. Carney & Son, 20 Kan. 474 The Kansas court, in a well considered opinion, held against the contention here made, and overruled a case where the Kansas court had held in accord with the plaintiff's contention. The decision on appeal in each of those cases is based upon the fact that the record brought up by plaintiff in error was a complete record of the case in the trial court. We have before us in this case what has every appearance of being a complete record made in the case in the trial court.

The objection made by the plaintiff in error that this court has no jurisdiction to consider the appeal presented by the cross-petition in error is not well taken and must be overruled.

The defendant complains of that portion of the judgment of the trial court in which he finds as follows:

"The court finds that said warranty deed executed and delivered on the 4th day of February, 1911, by plaintiff Nancy Bigpond now Harry, was obtained by fraud, and that the approval thereof was obtained by fraud, and the consideration named therein was not paid; that, therefore, said deed should be cancelled, set aside and held for naught"

—and that the judgment cancelling the deed is not supported by the evidence and is contrary to the law."

The record discloses that this deed was dated February 4, 1911, and was approved by the county judge of Creek county, Okla., on the 23rd of June, 1911. This deed seems to have been passed without the formality of an acknowledgment. The deed recited that it was given in consideration of the sum of $900 in hand paid, receipt of which is acknowledged. It conveys and warrants the title in fee to the land described. It recites that the conveyance is made for the purpose of correcting a former deed and is for the purpose of conveying all of the grantor's interest in the land. It is not shown in the petition for approval what consideration was to pass to plaintiff for the conveyance. It does recite that she had sold a life estate in the land for $600- In the order of approval it is recited that the petitioner for the approval appeared by counsel. It does not appear what the judge found out as to how much was being paid plaintiff for the fee title. He found that it had been paid and was adequate, whatever the sum might be, but there is no finding that the consideration recited in the deed had been paid. Whether plaintiff was present when this deed was approved is in dispute. Whether plaintiff knew what the contents of the deed were was also in dispute. Even if it was read through an interpreter to her, she no doubt learned therefrom that defendant was to give her $900 for the conveyance, for such was the recital contained in the deed. We do not find that it was ever made plain to her that defendant was counting in the $600 already paid her as so much of the $900 recited in the deed. It is not contended here that the defendant paid her $900 for the last conveyance. He

accounts for something over $200 he gave her while she contends that none of it was paid. As to what representations were made to her to get her to part with the fee title is in hopeless conflict, as is also the amount of consideration paid. The trial judge had the witnesses before him and had a much better opportunity to get at the truth of the matter than we have by any examination that can be made of the record. In no event has the defendant been out to exceed $900, and if any dependence can be put in the contentions made by plaintiff the amount was much less than that. It seems to us that the judgment was rather a fair and equitable solution of the troubles between the plaintiff and defendants than otherwise, when the deed for plaintiff's life is upheld and the deed purporting to convey the fee title is canceled. The judgment as rendered cannot greatly harm either of the contending parties. However this may be, after a careful examination of the record, we are unable to say that the portion of the findings and judgment which canceled the deed of February 4, 1911, is against the clear weight of the evidence, but are inclined to the idea that such findings and judgment are supported by the weight of the evidence offered upon that branch of the case.

We recommend that the entire judgment be upheld and affirmed.

By the Court: It is so ordered.